796 F.2d 553
 15 Collier Bankr.Cas.2d 273, Bankr. L. Rep. P 71,218
Domenico TRINGALI, et al., Plaintiffs, Appellees,
v.
HATHAWAY MACHINERY COMPANY, INC., Defendant, Appellant. (Two Cases).
 Nos. 85-1711, 85-1830.
 United States Court of Appeals,
First Circuit.
 Argued March 3, 1986.
Decided June 30, 1986.
 
 Timothy R. McHugh, with whom Hoch & Flanagan, P.C., Boston, Mass., was on brief, for defendant, appellant Hathaway Machinery Co., Inc. in No. 85-1711.
 William F. Looney, Jr., with whom Richard J. Grahn, Karen L. Bisaccio, and Looney & Grossman, Boston, Mass., were on brief, for defendant, appellant Hathaway Machinery Co., Inc. in No. 85-1830.
 Michael B. Latti, with whom William J. Griset, Jr. and Latti Associates, Boston, Mass., were on brief, for plaintiffs, appellees Domenico Tringali et al. in No. 85-1711.
 Craig M. Brown, with whom Richard J. Shea, Robert P. Powers and Melick & Porter, Boston, Mass., were on brief, for plaintiff, appellee Rose's Oil Service, Inc. in No. 85-1711.
 Robert L. Athas and Flash & Athas, Boston, Mass., on brief, for plaintiff, appellee Gloucester Marine Railways, Inc. in No. 85-1711.
 Paul P. Daley, with whom Lisa A. Miller, Hale and Dorr, Michael B. Latti and Latti Associates, Boston, Mass., were on brief, for plaintiffs, appellees Domenico Tringali, et al in No. 85-1830.
 Before COFFIN and BREYER, Circuit Judges, and MALETZ,* Senior Judge.
 BREYER, Circuit Judge.
 
 
 1
 These two appeals arise out of an accident on a fishing boat. Domenico Tringali, the boat's master, was using a winch with a line wrapped around it to pull a net filled with fish. The line became tangled around the spinning winch shaft, the free end whipped around his leg, and it pulled him into the mechanism, mangling his leg. He sued Hathaway, the winch manufacturer. The district court found that Hathaway should have provided a cover for the shaft and a more accessible safety brake; it awarded Tringali and his family about $1 million in damages. Hathaway appeals the lawfulness of the district court's judgment in respect to liability. After examining the record, we find that judgment lawful.
 
 
 2
 As a result of the large damage award, Hathaway filed a Chapter 11 bankruptcy proceeding in the bankruptcy court. At Tringali's request, the district court removed a portion of the proceeding from the bankruptcy court. 28 U.S.C. Sec. 157(d) (Supp. II 1984). It then lifted the Bankruptcy Code's "automatic stay" of other proceedings, 11 U.S.C. Sec. 362(d) (1982 & Supp. II 1984), in order to allow Tringali to bring a state court action to obtain the proceeds of Hathaway's $500,000 liability insurance policy. Hathaway appeals from the order lifting the stay. We have reviewed the rather complicated legal question that the "stay-lifting" order raises, and we conclude that the stay should have remained in place.
 
 
 3
 We shall discuss each appeal in turn.
 
 
 4
 * Hathaway's tort suit appeal consists of a series of challenges to district court determinations as to credibility, to its findings of fact, or to its judgments about 'reasonableness.' Since the power to make these decisions rests primarily with the district court, not with us, Hathaway has an uphill battle. Fed.R.Civ.P. 52(a); Anderson v. City of Bessemer City, 470 U.S. 564, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985); Solomon v. Warren, 540 F.2d 777, 784 (5th Cir.1976), cert. dismissed, 434 U.S. 801, 98 S.Ct. 28, 54 L.Ed.2d 59 (1977). After examining the record, we have concluded that the challenged court findings have adequate evidentiary support. Since the appeal raises no significant point of law, we see no reason to describe the tort case at length, and we shall simply summarize our reasons for rejecting Hathaway's arguments.
 
 
 5
 1. Hathaway says that the district court was wrong in finding it failed to cover the port winch shaft. It says it normally covers winch shafts; indeed, it says it covered the shaft on the starboard side of the boat in question. So, it argues, the lack of a cover on the portside shaft was not its doing. But, Tringali provided two witnesses who examined the shaft after the event and (reasonably) concluded Hathaway had never covered it; a schematic drawing of the winch also shows no cover on the portside shaft. This evidence is sufficient to support the district court's finding that Hathaway failed to provide a cover when it installed the winch in 1967.
 
 
 6
 2. Hathaway attacks the credibility of Tringali's expert--a naval architect named Gerrit Van Dissel. Hathaway points to what it says are inconsistencies in his testimony; it adds that Van Dissel's version about how the accident occurred represents a physical impossibility. Any inconsistencies, however, concern relatively unimportant matters. We have tried to understand Hathaway's "physical impossibility" argument by examining the record, by looking at photographs, and by reading the transcript of the trial; but, after doing so, we have failed to understand what significant feature of Van Dissel's account rests upon any physical impossibility. The trial court credited Van Dissel; it disbelieved Hathaway's expert. That being so, its findings about causation and negligence, which basically rest on Van Dissel's account, are lawful.
 
 
 7
 3. Hathaway says that Tringali is partly responsible for the accident himself, either because he negligently got his foot caught in the line or because he should have recognized (and corrected) the dangers inherent in the uncovered shaft and the too-distant safety brake. The district court, however, found explicitly to the contrary; it found that Tringali acted properly at all times, that he was not aware of the inherent dangers, and that his lack of awareness was not itself negligent. The record provides no basis for concluding that these findings are clearly erroneous or unreasonable. The cases Hathaway cites, Peymann v. Perini Corp., 507 F.2d 1318 (1st Cir.1974), cert. denied, 421 U.S. 914, 95 S.Ct. 1572, 43 L.Ed.2d 780 (1975); and Walker v. Lykes Bros. S.S. Co., 193 F.2d 772 (2d Cir.1952), are distinguishable because in these cases the injured plaintiffs knew of the dangerous conditions and had a duty to correct them.
 
 
 8
 4. Hathaway adds that the boat's owner (a corporation) should have been aware of the dangers, and that it was more than 5 percent negligent in failing to correct them. The record evidence, however, adequately supports the district court's apportionment of 95 percent to Hathaway and 5 percent to the boat's owner.
 
 
 9
 5. Finally, Hathaway says that Rose's Oil Service, Inc., a third party defendant, should have corrected the dangerous conditions when it repaired the winch in 1982. Tringali, however, asked Rose's to repair specific defects (which it did); he did not employ Rose's to give general advice about the winch or to repair each and every dangerous condition. That being so, the district court's finding that Rose's was not negligent has adequate record support.
 
 
 10
 We reject Hathaway's remaining arguments and affirm the district court's judgment.
 
 II
 
 11
 Hathaway's second appeal arises out of its Chapter 11 Bankruptcy Code proceeding. Tringali fears that this proceeding will interfere with its efforts to obtain the proceeds of Hathaway's $500,000 liability insurance policy. The plaintiff in another tort suit against Hathaway, Correia v. Hathaway Machinery Co., Case No. 85-3208-W, may want to obtain some of this insurance money. Tringali believes that, in the absence of the bankruptcy proceeding, he could file a state court action, and (as an earlier judgment creditor) receive all the insurance money. But, Tringali also realizes that the Bankruptcy Code imposes an "automatic stay" of other court proceedings. That stay would prohibit the state court action. Consequently, Tringali asked the district court to withdraw a portion of Hathaway's bankruptcy proceedings from the bankruptcy court, 28 U.S.C. Sec. 157(d), and to lift the "automatic stay" so that Tringali could bring the state court action, 11 U.S.C. Sec. 362(d). The district court did so. Hathaway now appeals the order lifting the stay.
 
 
 12
 The appeal raises five legal questions: 1) Is the district court order lifting the stay appealable? 2 Is the district court order withdrawing a portion of Hathaway's bankruptcy proceeding from the bankruptcy court void because of the parties' failure to follow local district court rules governing the assignment of cases to individual judges? 3) Is a liability insurance policy "property" of Hathaway's "estate," and thus subject to the "automatic stay?" 4) Does Hathaway have standing to complain of the "stay-lifting" order? 5) Did the district court have sufficient "cause" to lift the stay? 11 U.S.C. Sec. 362(d). We shall discuss each question in turn.
 
 
 13
 1. As an initial matter, we find the district court's order lifting the automatic stay is an appealable "final" order. See 28 U.S.C. Sec. 1291 ("The courts of appeals ... shall have jurisdiction of appeals from all final decisions of the district courts of the United States ...."). For one thing, the district court took jurisdiction of only one aspect of Hathaway's bankruptcy case, namely, that aspect dealing with the liability insurance policy. It did so for only one purpose, namely, to consider Tringali's request to lift the stay so it could bring a state court proceeding. And, since the district court lifted the stay, nothing remains to be done in respect to that aspect--the single matter before the court. The decision as to the only matter before the district court is final and complete.
 
 
 14
 For another thing, in the bankruptcy context, the word "final" has a somewhat special meaning. It is not limited to the single final order issued at the very end of an entire bankruptcy case--an order that ultimately disposes of all the debtor's assets on the basis (perhaps) of the results of many individual proceedings and controversies taking place over many years within the context of the overall bankruptcy case itself. Rather, after examining the relevant legislative and judicial history, we previously concluded that a " 'proceeding' within a bankruptcy case ... [not the entire case, is] the relevant 'judicial unit' for purposes of finality ...." In re Saco Local Development Corp., 711 F.2d 441, 445 (1st Cir.1983) (emphasis added). We have also held that in the bankruptcy context "an order which disposes of a 'discrete dispute within a larger case' will be considered final and appealable." In re American Colonial Broadcastinq Corp., 758 F.2d 794, 801 (1st Cir.1985).
 
 
 15
 Other courts have followed this approach. A.H. Robins Co. v. Piccinin, 788 F.2d 994, 1009 (4th Cir.1986); In re Amatex Corp., 755 F.2d 1034, 1039 (3d Cir.1985); In re Olson, 730 F.2d 1109-10 (8th Cir.1984); In re UNR Industries, Inc., 725 F.2d 1111, 1115-16 (7th Cir.1984); see 1 Collier on Bankruptcy p 3.03, at 3-121 (15th ed. 1985); 16 C. Wright, A. Miller, E. Cooper & E. Gressman, Federal Practice and Procedure Sec. 3926, at 69-72 (Supp. 1986). Moreover, the circuits that have addressed the issue have specifically held that an order lifting an automatic stay is an order disposing of a discrete dispute, and it is therefore final and appealable. In re Comer, 716 F.2d 168, 172 (3d Cir.1983) (order lifting the stay "is final in the sense that it completes litigation on the question .... Nothing more need be done by the district court or the bankruptcy court on the matter of the automatic stay .... The matter here is not one that can await final resolution of the bankruptcy proceedings."); Borg-Warner Acceptance Corp. v. Hall, 685 F.2d 1306, 1309 (11th Cir.1982). See In re Leimer, 724 F.2d 744, 745 (8th Cir.1984) (order denying relief from the stay is a final order); In re Taddeo, 685 F.2d 24, 26 n. 4 (2d Cir.1982) (same); see 1 Collier, supra, at 3-129. There is no contrary authority.
 
 
 16
 Of course, this appeal coming directly from the district court falls within the scope of 28 U.S.C. Sec. 1291, a general "appealability" statute; this appeal does not arise under 28 U.S.C. Sec. 1293(b) (currently 28 U.S.C. Sec. 158(d)), which deals specifically with bankruptcy appeals, and which was at issue in In re Saco Local Development Corp., supra, and In re American Colonial Broadcasting Corp., supra. We see no reason, however, for interpreting the word "final" in Sec. 1291 differently from the way we interpreted it in Secs. 1293(b) and 158(d). A.H. Robins Co. v. Piccinin, 788 F.2d at 1009 ("While section 1291 limits jurisdiction to appeals from 'all final decisions of the district courts,' the concept of finality under such statute has traditionally been applied 'in a more pragmatic and less technical way in bankruptcy cases than in other situations.' "); In re Amatex Corp., 755 F.2d at 1039 ("[A]lthough our jurisdiction must be established under Sec. 1291, it is appropriate that our judgment in this regard be informed by notions of finality in bankruptcy appeals."); In re UNR Industries, Inc., 725 F.2d at 1115 ("[W]hile 'finality,' interpreted functionally, might mean something different in a bankruptcy case from what it does in other cases, section 1291 is flexible enough to be applied differently depending on circumstances."); see also 16 C. Wright, A. Miller, E. Cooper & E. Gressman supra, at 71-72 (Supp. 1986) ("Reliance on Sec. 1291 need not lead to different finality results according to the circumstance whether the district court order was entered initially or on review of an order entered by a bankruptcy judge. Whatever measure of distinctive analysis is appropriate to bankruptcy proceedings can be applied under Sec. 1291 ...."). We conclude that the order is appealable.
 
 
 17
 2. Hathaway argues that lifting the stay is unlawful because the judge who entered the order did not have authority to withdraw the bankruptcy proceedings from the bankruptcy court. Hathaway points out that Tringali's "withdrawal" motion filed in the district court took the form of a five-page document filed in Tringali's tort suit, already pending before a particular district judge. Presumably, for this reason, the district court judge who decided the tort case also heard the bankruptcy withdrawal motion.
 
 
 18
 Hathaway says that the district court should have treated this document not as part of the tort case, but as an "initial pleading" in a different case, namely, a case against Hathaway (a debtor in bankruptcy) by Tringali (a creditor) seeking to have Hathaway's bankruptcy case transferred to the district court. Consequently, under Local Rule 8, Tringali should have filed this "initial pleading" with the district court clerk. Acting under Rule 8(d) and (e), the clerk would then have assigned it either to the judge hearing the tort case, or assigned it at random to a different judge, depending on whether he determined the bankruptcy and tort cases were, or were not, "related." Under Local Rule 8(e) the parties would have had ample opportunity to challenge the clerk's initial assignment. (See Appendix for text of Rule 8(e).) Hathaway believes the cases are not 'related' for it sees no particular virtue in having a judge who has just decided a case in favor of a particular tort plaintiff also decide how to divide the debtor's limited assets among that plaintiff and other (perhaps equally worthy) tort plaintiffs and creditors. It believes that, if the local rule had been followed, the clerk would have assigned the bankruptcy case to a different judge.
 
 
 19
 Tringali's threshold objection to this claim--some kind of argument that we lack jurisdiction to consider Hathaway's claim--is meritless. Hathaway raises this point now because it could not earlier appeal the order transferring a portion of the bankruptcy case from the bankruptcy court to the district court. That transfer order is interlocutory, not final. In re King Memorial Hospital, Inc., 767 F.2d 1508, 1510 (11th Cir.1985); In re Dalton, 733 F.2d 710, 714-15 (10th Cir.1984), cert. dismissed, --- U.S. ----, 105 S.Ct. 947, 83 L.Ed.2d 959 (1985). But now that the district court has entered a final, appealable order (namely, the stay-lifting order), Hathaway can ask us to review the legality of an earlier non-final decision upon which the later final decision depends. Hellerstein v. Mr. Steak, Inc., 531 F.2d 470, 474 (10th Cir.), cert. denied, 429 U.S. 823, 97 S.Ct. 75, 50 L.Ed.2d 85 (1976) ("The general rule is that an interlocutory order from which no appeal lies is merged into the final judgment and open to review on appeal from that judgment."); Skirvin v. Mesta, 141 F.2d 668, 672 (10th Cir.1944) (on appeal from appealable order or final judgment, all interlocutory orders affecting parties' rights in respect to matters in question between them are reviewable).
 
 
 20
 Moreover, the merits of Hathaway's point seem strong. A motion seeking withdrawal of a case from the bankruptcy court to the district court seems to fall within the literal scope of Rule 8's language. We gather that Rule 8 is currently being clarified. We hope that, in the future, litigants will understand that this is proper procedure. Cf. NLT Computer Services Corp. v. Capital Computer Systems, Inc., 755 F.2d 1253, 1255, 1258 (6th Cir.1985) ("Under the local rules of the district court, the withdrawn bankruptcy proceeding should have been assigned to a district judge on a random selection basis.... The district judge here did not have the authority to assign the bankruptcy action to himself in violation of these procedural rules." In light of the "unusual procedural posture" the district court judgment was vacated.)
 
 
 21
 Nonetheless, we shall not decide in Hathaway's favor on this particular matter, for Hathaway has waived the issue. The record reveals that the district judge initially expressed uncertainty about whether the motion to withdraw the bankruptcy proceeding was properly before him. The transcript reflects confusion among the parties on this point. Tringali's counsel thought any procedural obstacle to the transfer would be overcome if he asked the court to withdraw "only that portion of the reference dealing with the Tringali matters and the Correia (the other tort case) matters and the insurance policy and with any use of assets outside the ordinary course of business." The judge then asked for "a proposed order to that effect." He said to Hathaway's counsel, "You couldn't have any objection to that, could you?" And, counsel replied, "I guess I don't." A few days later, Tringali's counsel sent a copy of the proposed order to the court, stating that the "parties have agreed upon this proposed form of order." Hathaway's counsel raised no objection. These facts amount to a waiver of any objection to this district judge's order withdrawing a portion of the bankruptcy case to the district court.
 
 
 22
 3. Tringali argues that the proceeds of liability insurance are not even subject to the "automatic stay," for they are not "property of the estate." 11 U.S.C. Sec. 541(a)(1) (1982 & Supp. II 1984). This fact, in its view, means the Bankruptcy Code did not prohibit its planned journey to the state court in the first place; the lifting of the stay was therefore irrelevant; and we should dismiss the appeal, perhaps as moot. We do not agree with the initial premise of this argument, however, for language, authority, and reason all indicate that proceeds of a liability insurance policy are "property of the estate."
 
 
 23
 Bankruptcy Code Section 541(a)(1) provides that the "estate is comprised of all of the following property, wherever located and by whomever held: (1) ... all legal or equitable interests of the debtor in property as of the commencement of the case." The Supreme Court has said, interpreting this section, that "[t]he House and Senate Reports on the Bankruptcy Code indicate that Sec. 541(a)(1)'s scope is broad," and it quoted the following from the legislative history:
 
 
 24
 The scope of this paragraph [Sec. 541(a)(1) ] is broad. It includes all kinds of property, including tangible or intangible property, causes of action ... and all other forms of property currently specified in section 70a of the Bankruptcy Act.
 
 
 25
 United States v. Whiting Pools, Inc., 462 U.S. 198, 204-05 & n. 9, 103 S.Ct. 2309, 2313 & n. 9, 76 L.Ed.2d 515 (1983). The language of Sec. 541(a)(1) is broad enough to cover an interest in liability insurance, namely, the debtor's right to have the insurance company pay money to satisfy one kind of debt--debts accrued through, for example, the insured's negligent behavior.
 
 
 26
 Every court that has recently considered the specific question has held that liability insurance falls within the scope of Sec. 541(a)(1). A.H. Robins Co. v. Piccinin, 788 F.2d at 1001-02; In re Davis, 730 F.2d 176, 184 (5th Cir.1984); In re Forty-Eight Insulators, Inc., 54 B.R. 905, 907-09 (Bankr. N.D.Ill.1985); In re J & L Transport, Inc., 47 B.R. 51, 52 (Bankr. W.D.Wisc.1985). But see In re Fay Stocking Co., 95 F.2d 961, 962-63 (6th Cir.1938). The Fourth Circuit has said:
 
 
 27
 A products liability policy of the debtor is ... within [the statutory definition of "property of the estate"]: it is a valuable property of a debtor, particularly if the debtor is confronted with substantial liability claims within the coverage of the policy in which case the policy may well be ... "the most important asset of ... [the] estate."
 
 
 28
 A.H. Robins Co. v. Piccinin, 788 F.2d at 1001 (quoting In re Johns Manville Corp., 40 B.R. 219, 229 (S.D.N.Y.1984)). This judicial unanimity is not surprising. Any contrary holding could start a race to the courthouse whenever a policy is too small to satisfy several potential plaintiffs. Such a race could mean unfair results as between potential plaintiffs; it could also prevent a bankruptcy court from marshalling the insurance proceeds, and, along with other assets, arranging for their distribution so as to maximize their ability both to satisfy legitimate creditor claims and to preserve the debtor's estate. See In re Forty-Eight Insulators, Inc., 54 B.R. at 908.
 
 
 29
 The main contrary authority to which Tringali points consists of a single sentence in Collier stating that "[w]here the claim is one covered by insurance or indemnity, continuation of the [non-bankruptcy, state court] action should be permitted since hardship to the debtor is likely to be outweighed by hardship to the plaintiff." 2 Collier, supra, p 362.07, at 362-57. This sentence, however, simply provides a reason for lifting the stay; it does not provide a conclusive reason for denying liability insurance Sec. 541(a)(1) status as "property." (Indeed Collier, here, in referring to a weighing of "comparative hardships," provides a reason for considering insurance proceeds as property of the estate, for only then would a "balance of hardships" become relevant.)
 
 
 30
 4. Tringali argues that Hathaway lacks standing to bring this appeal. It says the lifting of the stay may hurt Correia, the other tort plaintiff, but it does not hurt Hathaway, for the insurance proceeds can be paid only to tort plaintiffs, not to Hathaway itself. This argument, however, overlooks the fact that the extent to which the policy is used to satisfy each of the tort plaintiffs may affect their need to seek immediate payment from the remainder of Hathaway's assets. Since a division of policy assets through negotiation could lead these creditors, perhaps bargaining with others, to give Hathaway more time or greater leeway to reorganize, Hathaway's remaining estate could be affected by how, when and to whom the insurance proceeds are paid. And, this fact, as well as Hathaway's interest in an orderly reorganization, gives it standing to appeal, for it suggests a potential injury in fact, see Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982), that is within the scope of the interests that the statute protects, see Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970).
 
 
 31
 5. Finally, we turn to Hathaway's claim that the district court "abused its discretion" in lifting the stay. See In re Holtkamp, 669 F.2d 505, 507 (7th Cir.1982). The relevant statute, Bankruptcy Code Sec. 362(d), provides:
 
 
 32
 On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay--
 
 
 33
 (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or
 
 
 34
 (2) with respect to a stay of an act against property under subsection (a) of this section, if--
 
 
 35
 (A) the debtor does not have an equity in such property; and
 
 
 36
 (B) such property is not necessary to an effective reorganization.
 
 
 37
 We agree with Hathaway, but with a qualification. We agree that the record does not yet bring this case within the terms of the statute. That is to say, so far it does not show "cause" for lifting the stay; nor does it yet show whether or not the "property" is "necessary to an effective reorganization."
 
 
 38
 In fact, the record reveals that the district court had before it few facts and no more than a bare skeleton of an argument. (And, we have nothing more before us.) Correia, the second tort plaintiff, did little more than note its opposition to lifting the stay. Hathaway also opposed lifting the stay, claiming that (but not fully explaining how) lifting the stay would affect the rest of its reorganization. Hathaway's Creditors' Committee told the court that it had been formed recently, that it had received authority to retain counsel only three weeks earlier, and that it had not yet thoroughly reviewed the matter; but it believed (in light of the second tort plaintiff) that giving Tringali absolute priority could hinder reorganization efforts. The Committee recommended that the policy proceeds be "paid into Court or otherwise held in escrow" pending resolution of any relevant disputes over priority.
 
 
 39
 In response, Tringali made two arguments to the court in favor of lifting the stay. It said: 1) state law would give it priority over Correia in obtaining insurance proceeds; and 2) if it did not file the state court suit, the insurance company might pay the policy proceeds to someone else.
 
 
 40
 The first of these arguments--the existence of a state law priority--is sufficient to raise the question about whether the stay should be lifted, but it does not (standing alone and on the present state of the record) provide an adequate answer. The very point of federal bankruptcy law is to substitute for a set of potentially varying preferences and priorities arising under other laws, a single rational federal system for dealing with legitimate claims that exceed in amount a limited set of assets. Cf. H.R.Rep. No. 595, 95th Cong., 2d Sess. 285, reprinted in 1978 U.S. Code Cong. & Admin. News 5787, 5963, 6242 ("Other laws that grant priorities do so at the expense of other creditors and to the detriment of the orderly liquidation and distribution of a bankrupt estate. Thus, the bill, in the interest of a coherent bankruptcy policy, eliminates special priorities found in other laws and brings all priorities into the bankruptcy code itself."); A.H. Robins Co. v. Piccinin, 788 F.3d at 998 ("The purpose of this section ... is to protect the debtor from an uncontrollable scramble for its assets in a number of uncoordinated proceedings in different courts, to preclude one creditor from pursuing a remedy to the disadvantage of other creditors, and to provide the debtor and its executives with a reasonable respite from protracted litigation, during which they may have an opportunity to formulate a plan of reorganization for the debtor."); In re Alyucan Interstate Corp., 12 B.R. 803, 806 (Bankr. D.Utah 1981) ("[The stay] shields creditors from one another by replacing 'race' and other preferential systems of debt collection with a more equitable and orderly distribution of assets. It encourages rehabilitation ...."). In light of this purpose, we do not see how a court could answer the stay-lifting question until it knows whether, in fact, state law gives Tringali priority (for a tort claim still disputed on appeal), why state law does so, whether recognition of that priority could hurt other creditors (say, another tort plaintiff), how it might do so, and why the bankruptcy court must allow Tringali to bring a state court suit rather than itself recognizing any legitimate priority. While the record is sufficient to raise these questions, it neither investigates nor answers them.
 
 
 41
 Moreover, federal bankruptcy law, through the device of the 'automatic stay,' provides a sensible, fair way for the bankruptcy court to find the answers to these (or other similar) questions, while minimizing the harm caused by the fact that it may take time to do so. The stay gives a "breathing spell" to the debtor and stops "all collection efforts, all harassment, and all foreclosure actions." H.R.Rep. No. 595, 95th Cong., 2d Sess. 340, reprinted in 1978 U.S. Code Cong. & Admin. News 5963, 6296-97, quoted in In re Lopez-Soto, 764 F.2d 23, 25 (1st Cir.1985). As we said in Lopez-Soto, 764 F.2d at 27, it protects not only the debtor but also the creditor, for, according to the House Report,
 
 
 42
 [w]ithout it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally. A race of diligence by creditors for the debtor's assets prevents that.
 
 
 43
 H.R.Rep. No. 595, 95th Cong., 2d Sess. 340, reprinted in 1978 U.S. Code Cong. & Admin. News 5963, 6297.
 
 
 44
 Given these policies underlying federal bankruptcy law, the simple conclusory assertion that state law would give Tringali a priority cannot (standing alone without some consideration of the plausible claim of harm by Hathaway or other creditors) provide 'cause' for lifting the stay.
 
 
 45
 Tringali's second argument--that failure to lift the stay could lead to dissipation of the policy proceeds--is simply wrong. The proceeds--as assets of the estate--are subject to 11 U.S.C. Sec. 362(a), which prohibits not only court proceedings but also, among other things:
 
 
 46
 (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
 
 
 47
 (4) any act to create, perfect, or enforce any lien against property of the estate;
 
 
 48
 (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title.
 
 
 49
 Moreover, the Creditors' Committee has suggested payment of the proceeds into court or placing them in escrow. Tringali has provided us with no explanation of how continuation of the stay will cause it injury. See In re Wynn Homes, Inc., 14 B.R. 520, 523 (Bankr. D.Mass.1981) ("The first factor in determining whether to alter or modify a stay is whether the secured creditor will suffer imminent and irreparable injury from the continuation of the stay.").
 
 
 50
 We conclude that the automatic stay should remain in effect. Moreover, this matter should be returned to the bankruptcy court, which is in the best position to resolve the parties' arguments in light of potential competing claims by other creditors. The parties remain legally free to ask the district court to transfer all or part of the bankruptcy case from the bankruptcy court (though, in saying this, we do not mean to suggest any such request should be granted). 28 U.S.C. Sec. 157(d). Should either of the parties make such a motion, they are to follow the procedure specified in Local Rule 8.
 
 
 51
 So ordered.
 
 APPENDIX
 RULE 8
 Calendar
 
 52
 (a) Preparation of calendar. Each judge of the court will place cases assigned to him on his calendar as required by law and in such manner as he determines is most consistent with the just, efficient performance of the business of the court.
 
 
 53
 (b) Categories of cases. All cases filed in the court shall be designated as falling within one of the following categories:
 
 
 54
 (1) Bankruptcy
 
 
 55
 (A) General
 
 
 56
 (B) Corporate Reorganization
 
 
 57
 (2) Civil
 
 
 58
 (A) Admiralty and Maritime claims (except Jones Act.)
 
 
 59
 (B) Antitrust
 
 
 60
 (C) Contract
 
 
 61
 (D) Copyright, Trademark, Unfair Competition
 
 
 62
 (E) Government Note
 
 
 63
 (F) Habeas Corpus
 
 
 64
 (G) Interstate Freight Damage
 
 
 65
 (H) Labor
 
 
 66
 (I) Libel of Forfeiture
 
 
 67
 (J) Patent
 
 
 68
 (K) Tax
 
 
 69
 (L) Tort (including Jones Act)
 
 
 70
 (M) Other
 
 
 71
 (3) Criminal
 
 
 72
 (A) Antitrust
 
 
 73
 (B) Other
 
 
 74
 (c) Designation of category.
 
 
 75
 (1) The party filing the initial pleading in a case shall designate on a category sheet provided by the office of the clerk (see Appendix A) the category in which he believes the case belongs. The category sheet shall be filed with the pleading.
 
 
 76
 (2) When the initial pleading in a case is filed, the clerk shall place the case in a category, which shall be the one indicated by the party filing the pleading unless the clerk determines that another category is more appropriate, and such category shall not thereafter be changed, except by order of the Chief Judge.
 
 
 77
 (d) Assignment. The clerk shall assign cases to the judges of the court by lot in such manner that each judge shall be assigned as nearly as possible the same number of cases in each category.
 
 
 78
 .............................................................
 
 
 79
 ...................
 
 
 80
 * * *
 
 
 81
 (e) Related cases.
 
 
 82
 (1) One case shall be deemed to be "related" to another for purposes of this rule when, because of similarity of facts and legal issues, a substantial saving of the time of the whole court is likely to result if the cases are assigned to the same judge.
 
 
 83
 (2) If the party filing the initial pleading in a case believes that it is related to a case already assigned, whether or not the case is then pending, he shall indicate the title and number of such case on the category sheet. If he believes that the case is related to a case not yet assigned, he shall indicate the title of such case on the category sheet.
 
 
 84
 (3) The clerk shall determine which cases are related, and shall assign related cases to the same judge without regard to the number of other cases in the category to which the related cases belong that have previously been assigned to that judge. Related cases shall not be counted as cases assigned, except as the Chief Judge may otherwise direct. When cases are assigned to the same judge because the clerk determines that they are related, the clerk shall so advise the judge.
 
 
 85
 (4) The clerk's determination that two cases are related shall be subject to correction only by the judge to whom they have been assigned, who shall return cases erroneously assigned on that basis to the clerk for reassignment. The clerk's determination that a case is not related to any other case shall be subject to correction only by the joint decision of the judge to whom it has been assigned and the judge to whom it should be assigned if related to another case. The judges may then transfer the case pursuant to section (g) of this rule, and shall notify the clerk of the reason for the transfer.
 
 
 86
 (f) Proceedings after assignment. All proceedings in a case after its assignment shall be conducted before the judge to whom it has been assigned, except as otherwise provided in these rules.
 
 
 87
 (g) Reassignment and transfer of cases. In the interest of justice or to further the efficient performance of the business of the court, a judge may return a case to the clerk for reassignment, whether or not the case is related to any other case, or may transfer the case to another judge, if the other judge consents to the transfer.
 
 
 88
 (h) Motion for consolidation of cases. A motion for the consolidation of two or more cases shall be made in the case first filed in this court.
 
 
 89
 (i) Proceedings after appeal. When an appellate court remands a case to this court for a new trial, the case shall be reassigned to a judge other than the judge before whom the first trial was held. In all other cases in which the mandate of the appellate court requires further proceedings in this court, such proceedings shall not be conducted before the judge before whom the prior proceedings were conducted unless he determines that there will result a substantial saving in the time of the whole court and that there is no reason why in the interest of justice, further proceedings should be conducted before another judge. If the judge before whom the prior proceedings were conducted does not retain the case for further proceedings, he shall return it to the clerk for reassignment.
 
 
 
 *
 Of the United States Court of International Trade, sitting by designation