891 F.2d 1
 100 A.L.R.Fed. 773, 19 Bankr.Ct.Dec. 1755
 In re SUMMIT CORPORATION, a/k/a Summit Financial
Corporation, Debtor.
Appeal of ATLANTIC PACKAGING CORPORATION (Two Cases).
In re John A. GRANT, Debtor.
 Nos. 88-1642, 88-1643 and 88-1692.
 United States Court of Appeals,
First Circuit.
 Heard Feb. 7, 1989.
Decided Nov. 28, 1989.
 
 Peter A. Fine with whom Larry C. Kenna, Douglas W. Salvesen and Choate, Hall & Stewart, Boston, Mass., were on brief, for appellant.
 Daniel L. Goldberg with whom Neal A. Rosen and Bingham, Dana & Gould, Boston, Mass., were on brief, for appellee Rand-Whitney Robertson Corp.
 Before CAMPBELL, Chief Judge, COFFIN, Senior Circuit Judge, and TORRUELLA, Circuit Judge.
 TORRUELLA, Circuit Judge.
 
 
 1
 During the Chapter 7 proceedings to liquidate the estate of John Grant, the district court noticed the sale of Grant's 70% interest in Atlantic Packaging Corporation ("APC"). The only bidders for the APC stock were Rand-Whitney Robertson Corporation ("Rand"), one of APC's major competitors, and Andrew D'Elia ("D'Elia"), a 30% owner of APC. The major dispute between the parties arose when Rand requested an order from the court to investigate APC's affairs. APC opposed such discovery on the ground that Rand was a principal competitor. The three orders appealed from were issued as a result of this controversy. The orders essentially: 1) compelled APC to comply with an earlier discovery order and allowed costs for past non-compliance (the "first order"); 2) awarded Rand $10,421.77 in costs pursuant to the first order (the "second order"); and 3) denied APC's motion for Fed.R.Civ.P. 11 sanctions against Rand (the "third order"). APC appeals.
 
 Procedural Background
 
 2
 Before the district court's notice of sale of the APC stock, D'Elia, APC's President and Chief Executive Officer ("CEO"), had made a preliminary agreement with Grant's trustee to purchase Grant's 70% interest in APC.
 
 
 3
 The district court then fixed a deadline for the receipt of any competing offers. Rand submitted an offer conditioned, inter alia, on its being afforded an opportunity to conduct a diligent investigation of APC's business and on the rejection by the trustee of APC's incorporation agreement. Rand moved for an order permitting it to enter the offices of APC, "speak with management personnel and other employees" and "view all corporate financial and business related documents, instruments and contracts." Rand's request was allowed by the district court ex parte. APC and D'Elia filed an opposition to the request principally on the ground that "the Request seeks to discover APC's trade secrets and confidential business information for the benefit of APC's primary, direct competitor." After a hearing was held on February 18, 1988, the court modified its discovery order by prohibiting Rand representatives from entering the factory floor[1] and by excluding access to customer lists, as well as cost and price information (the "discovery order"). The court agreed with counsel for Rand that should disagreements arise regarding the implementation of the discovery order, the parties could return to court to settle any differences. The court set March 2, 1988 at 10:30 AM as the deadline to submit sealed bids for the APC stock.
 
 
 4
 Pursuant to this order, Rand delivered to APC a list of 21 groups of documents that it sought to review on APC's premises. APC replied that 10 out of the 21 groups of documents were of a confidential nature and consequently not within the court's authorization.
 
 
 5
 D'Elia and APC filed a motion to vacate the order permitting discovery. As grounds for setting aside the discovery order, they argued for the first time that the court lacked authority to order APC to disclose its business records to its primary competitor. In the alternative, D'Elia and APC sought clarification or modification of the order so as to exclude from discovery information regarding the 10 groups of documents that they had objected to.[2] Rand responded by seeking compliance with the discovery order and requesting sanctions and costs against APC. Rand indicated that the groups of documents objected to by APC were clearly within the discovery order. According to Rand, the only conceivable rationale for APC's refusal to disclose the documents was to frustrate Rand's ability to bid on the APC shares.
 
 
 6
 On February 26, 1988, at the hearing on the motions, the court found that in denying discovery to Rand APC did not act in good faith. It ordered APC to disclose most of the items it had objected to.[3] Following the hearing, the court issued an order requiring compliance with the discovery order and providing that APC would bear the burden of showing that information requested by Rand was excluded from that order. Failure to obey this order in the future would result in the imposition of sanctions against APC. The court also allowed Rand the costs, including reasonable attorney's fees, incurred in attempting to obtain compliance with the discovery order. This is the first order appealed from. The second order was issued pursuant to the first. It awarded Rand $10,421.77 in costs.
 
 
 7
 Ultimately both D'Elia and Rand submitted further bids for the APC stock. The district court approved D'Elia's bid. Aside from the discovery disputes, APC also challenged Rand's continued participation in the bidding process. It argued, for example, that the incorporation agreement of APC had been already assumed by the trustee and, since Rand's offer was conditioned upon the rejection of the incorporation agreement, the offer should be rejected. Rand moved for sanctions under Fed.R.Civ.P. 11 against APC on the grounds that APC's motions were "palpably false." APC responded by filing a Rule 11 motion asking for sanctions against Rand on the ground that Rand's Rule 11 motion was frivolous. The district court denied both Rule 11 motions. This is the third order that APC appeals from.
 
 Jurisdiction
 
 8
 As a threshold matter, we will address Rand's contention that this court lacks jurisdiction to review the first order either because APC's Notice of Appeal was untimely or because the issue is moot.
 
 
 9
 First, the fact that APC filed the Notice of Appeal well after 30 days following the entry of the first order does not defeat appellate jurisdiction. The first order was not final and appealable because the court had to set the amount of costs allowed. This was not a "decision resolving the contested matter, leaving nothing to be done except execution of the judgment." United States v. Metropolitan Dist. Com'n, 847 F.2d 12, 14 (1st Cir.1988). The second order setting the cost amount being properly before this court, we have jurisdiction to review the first interlocutory order that allowed costs. See Tringali v. Hathaway Machinery Co., Inc., 796 F.2d 553, 559 (1st Cir.1986).
 
 
 10
 Second, Rand maintains that the first order is moot because APC, "by its own admission, fully complied with the Order." It is uncontested that following the first order APC permitted Rand access to the groups of documents listed by the district court. However, the discovery of documents was only part of that order. The order also imposed costs for APC's past noncompliance with the previous discovery decree. It is this part of the order that APC appeals. Because APC has not paid the costs imposed under that order, the appeal is not moot. Cf. In re Cordova Gonzalez, 726 F.2d 16, 20 (1st Cir.), cert. denied, 466 U.S. 951, 104 S.Ct. 2154, 80 L.Ed.2d 540 (1984).
 
 The Discovery Order
 
 11
 APC questions the court's authority to issue the discovery order and in the alternative attacks its correctness.
 
 
 12
 As to the court's authority, APC's position, which was argued for the first time at the February 26 hearing, is that the district court cannot order a non-party in a bankruptcy proceeding to disclose as much information as that requested by Rand from another non-party.
 
 
 13
 Unquestionably, bankruptcy courts historically have had the power to sell the assets of the estate. See Van Huffel v. Harkelrode, 284 U.S. 225, 227, 52 S.Ct. 115, 116, 76 L.Ed. 256 (1931); Ray v. Norseworthy, 23 Wall. 128, 135, 23 L.Ed. 116 (1874). This power, which is recognized in the Bankruptcy Code,[4] is implicit for an efficient administration and liquidation of the estate.
 
 
 14
 In this case, the sale of the majority of APC stock involved only two bidders: D'Elia, President and CEO of APC, and Rand. In order to achieve the goals of maximizing the value of the estate and protecting the interests of creditors, the court has plenary power to provide for competitive bidding. Under 11 U.S.C. § 105, the court may "issue any order ... that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. The discovery decree in this case is such an order. It provided Rand with the necessary information to reach an intelligent assessment of APC stock. Without this information, Rand would have been unable to submit a competitive bid, particularly considering that the other bidder, D'Elia, had direct access to information concerning APC's financial condition and operations. In these circumstances, there is no doubt that the court had authority to issue the discovery order.
 
 
 15
 APC claims that Rule of Bankruptcy Procedure 2004, "which can be the only basis for Rand-Whitney's Request to Review Documents," is limited to discovery by a "party in interest."[5] Although Rule 2004 does not define the term "party in interest," 11 U.S.C. § 1109 refers to parties in interest for purposes of the right to be heard in a Chapter 11 case. For this purpose, a party in interest includes "the debtor, the trustee, a creditors' committee, an equity security holder's committee, a creditor, an equity security holder, or any indenture trustee ..." 11 U.S.C. § 1109(b). The list, however, is not exclusive. Courts have generally construed the term "party in interest" as used in 11 U.S.C. § 1109(b) liberally. See In re Amatex Corp., 755 F.2d 1034, 1042 (3d Cir.1985) and cases therein cited.
 
 
 16
 A similar common sense interpretation must be made of cases under Rule 2004. See In re Apex Oil Co., 101 B.R. 92, 95 (E.D.Mo.1989) (Rule 2004 is broad in nature). In the instant case the court had decided to sell debtor's 70% interest in APC. It had before it two prospective bidders. In this context and for the purpose of allowing the submission of competitive bids, Rand was an "interested party" within the meaning of Rule 2004. To accept APC's limited interpretation of the term "party in interest" is contrary to the goal of maximizing the value of the estate and would undermine the process of disposing of its assets.
 
 
 17
 On the merits, APC asserts that the district court's order was too broad. According to APC, Rand had no legal claim that outweighed APC's interest in the privacy of its business affairs. We disagree. Although initially the court issued an ex parte blanket order, after a hearing the court tailored the discovery so as to achieve a balance between the confidentiality of APC's affairs and the need for competitive bidding. The court specifically withheld from Rand sensitive information concerning customer lists, as well as cost and price information. Furthermore, the information released to Rand was protected under a Confidentiality Stipulation entered into between Rand and APC. The Stipulation restricted the use of the information received by Rand and required that Rand treat the information as strictly confidential, so as to protect APC against Rand's using the information to gain an unfair competitive advantage.
 
 Costs and Attorney's Fees: Imposition
 
 18
 APC attacks the imposition of costs and attorney's fees on the grounds that: (1) APC did in fact comply fully with the court's instructions, and (2) the district court did not have evidence before it to justify its finding of bad faith.[6]
 
 
 19
 Before addressing these issues, we should inquire as to the nature of the first order. APC attempts to characterize the court order throughout its brief as a finding of civil contempt. Thus, it reasons that Rand had the " 'heavy burden' of proving a violation of the District Court's order by clear and convincing evidence." APC's characterization is incorrect. In order for a court to find a person in contempt, the court must find so specifically. See Fed.R.Civ.P. 70. In the instant case, after the second order was issued, APC complied. APC was never adjudged in contempt.[7] The court's allowance of costs is better portrayed as an imposition of sanctions against APC for its noncompliance with an earlier order. As such, the order is more analogous to a Fed.R.Civ.P. 37 sanction for noncompliance with a discovery order. Under this rule, it is within the trial court's discretion to impose sanctions. Thus, only upon an abuse of discretion will this court disturb the district court's decision imposing sanctions. National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976); United States v. Klimavicius, 847 F.2d 28, 31-32 (1st Cir.1988).
 
 
 20
 APC relies primarily on the court's modification of the original blanket discovery order to support its stance that it did comply with the court's instructions. APC's position is that its refusal to disclose the ten groups of documents, see note 2, supra, was made pursuant to the court's instructions that the parties could return to the district court to settle any disputes concerning the discovery order. According to APC, much of the information sought by Rand arguably fell outside the scope of the district court's order, excluding customer lists, as well as costs and price information. Although the court agreed with APC that three out of the ten groups of documents should not be disclosed, the court found that APC disobeyed the court's order as to the other seven groups. We find that the court did not abuse its discretion in finding that APC did not comply. A review of the groups of documents shows that the documents were not within the exclusion tailored by the district court. See note 2, supra. For example, Rand's request for a schedule of accounts receivable specifically provided that the "information may be provided ... without customer names." Additionally, most of the items requested, such as tax returns, financial statements, etc., were necessary for Rand's valuation of the business.
 
 
 21
 As to the district court's finding of bad faith, APC had once again couches its argument on civil contempt terms. The proper standard, however, is abuse of discretion. We find that the court did not abuse its discretion. The court was aware that the only other bidder for APC's stock was D'Elia, who had access to APC's information. Faced with the imminent deadline for submitting bids, the court was informed that APC refused to comply with the discovery order. APC admitted that it had refused to disclose the content of these documents, most of which the court found to fall clearly within the original discovery order. This information was sufficient to sustain a finding of bad faith.
 
 Costs and Attorney's Fees: Amount
 
 22
 APC challenges the amount of costs and attorney's fees allowed by the district court on the ground that Rand is being reimbursed for time which would have been spent in any event. APC maintains that Rand should be compensated only for the reasonable time spent preparing and arguing its motion to compel and for expenses directly caused by APC's failure to produce the required documents. We agree. The affidavits submitted by Rand include fees incurred on February 22, the day before APC failed to comply with the court order. In its brief, Rand admits that it was on February 23 that counsel for APC indicated APC would not produce some of the documents requested. As to those February 22 fees, Rand should not be reimbursed. The award of costs is set aside and the case remanded with instructions that the district court delete from its award of costs and attorney's fees not including the items claimed for time spent on February 22.
 
 The Rule 11 motions
 
 23
 As previously mentioned, Rand moved for Fed.R.Civ.P. 11 sanctions against APC on the grounds that some of the APC filings were groundless and interposed for the improper purpose of impeding Rand from submitting bids on the APC stock. In response, APC moved for Rule 11 sanctions against Rand on the ground that Rand's Rule 11 motion had no legal basis. The district court denied both Rule 11 motions. APC appeals this ruling. We reject APC's contentions. Rand's Rule 11 motion, although not clearly supported, was not frivolous. We refuse to second guess the district court's decision to deny, in its discretion, APC's Rule 11 motion. In re D.C. Sullivan Co., Inc., 843 F.2d 596, 599 (1st Cir.1988) (in considering a Rule 11 motion "... trier of fact has broad discretion in deciding whether counsel acted responsibly ...").
 
 Conclusion
 
 24
 The orders appealed are affirmed except that the amount of costs is set aside and the case remanded for a recalculation of that amount consistent with this opinion.
 
 
 
 [1]
 Although the written order does not make reference to the exclusion from the factory floor, the record explicitly contains that exclusion
 
 
 [2]
 The groups of documents that APC did not wish to hand over were the following:
 
 
 [1]
 Aging Schedule of accounts receivable (information may be provided in summary fashion without customer names)
 
 
 [2]
 Detailed information regarding liabilities and debts, including, without limitation, loans, guaranties and other contingent liabilities, claims, pending and threatened litigation, and government fines and penalties
 
 
 [3]
 Copies of all past and present union contracts
 
 
 [4]
 Copies of all employee benefits, policies and programs, including, without limitation, any profit-sharing and pension programs, employee health and insurance programs, holidays and vacation policies
 
 
 [5]
 List of all employees, including positions, salaries, bonuses and commissions
 
 
 [6]
 Information regarding aging of raw materials used in the operation of the business
 
 
 [7]
 Schedule of type and value of inventory, including raw materials, work in progress and finished goods
 
 
 [8]
 List of suppliers, including history of purchases expressed in tons for purchases of raw materials, with copies of all such contracts from each supplier with purchases over $25,000
 
 
 [9]
 For the past three years, copies of returns for all taxes paid, including, without limitation, federal, state and local taxes and excise taxes
 
 
 [10]
 For the past three fiscal years, all audited balance sheets and the related statements of income and stockholders' equity and changes in financial position for the fiscal years then ended, audited by independent public accountants or otherwise if such information is unpublished at the time and any unaudited interim statements to January 31, 1988
 
 
 [3]
 The court ordered disclosure of all items except 3, 4 and 5. See note 2 supra
 
 
 [4]
 See, e.g., 11 U.S.C. § 363(b) (giving the trustee power to dispose of the property of the estate other than in the ordinary course of business)
 
 
 [5]
 Rule of Bankruptcy Procedure 2004 provides in relevant part, as follows:
 "(a) Examination on Motion. On motion of any party in interest, the court may order the examination of any entity."
 
 
 [6]
 APC also argues for the first time on appeal that Rand should have obtained a subpoena specifying the documents it wished to review. This is not one of the "few exceptional cases" where we will depart from the general rule that we will not entertain issues not raised below. See Fitzgerald v. Codex, 882 F.2d 586 (1st Cir.1989); United States v. Kobrosky, 711 F.2d 449, 457 (1st Cir.1983)
 
 
 [7]
 Because APC was never adjudged in contempt we need not address APC's argument that it had an adequate excuse for not complying with the order. As APC concedes this is a defense in a contempt proceeding