In re BROADMOOR PLACE
INVESTMENTS, L.P.,
Debtor.

G–K DEVELOPMENT COMPANY,
INC., Appellant,

v.

BROADMOOR PLACE INVESTMENTS, L.P., Forrest L. Robinson, Resolution Trust Corporation, Blue Valley Federal Savings and Loan, and United States Trustee, Appellees.

Nos. 92–3043, 92–3048.

United States Court of Appeals,
Tenth Circuit.

May 21, 1993.

Rehearing Denied June 17, 1993.

William M. Modrcin, Kansas City, MO (Ronald L. Gold, Shawnee Mission, KS, with him on the brief) for appellant.

Sherman A. Botts, John W. McClelland (Roy H. Farchmin, William F. Schoeb, Wirken & King, and Michael R. Roser, Jennifer H. McCoy, Lathrop & Norquist, Kansas City, MO, with them on the brief) for appellees.

Before KELLY and BARRETT, Circuit Judges, and OWEN, District Judge.*

OWEN, District Judge.

G–K Development Company, Inc. ("G–K") appeals from an order of the United States District Court for the District of Kansas affirming the Bankruptcy Court's approval of the sale of the Broadmoor Place office building in Mission, Kansas to one Forrest L. Robinson. G–K contends that it, not Robinson, was and is the rightful purchaser of the property.

Broadmoor Place Investments ("Broadmoor") was a Kansas limited partnership whose sole asset was the said building. Broadmoor filed a Chapter 11 petition in October, 1989. It then signed an agreement[1] in June and July 1990 for the sale of the building to G–K, for $5.7 million. The said agreement necessarily required Broadmoor to seek the approval of the Bankruptcy Court for the sale and to use its best efforts to obtain that approval.

Thereafter, in August, 1990, Broadmoor signed another agreement for the sale of the building to Robinson. G–K's bid was $5,700,000, subject to financing and other contingencies. The Robinson bid was $5,500,000 cash, no material contingencies, and a $50,000 earnest money deposit. At this point, Broadmoor sought Bankruptcy Court approval for the sale. Broadmoor's application presented G–K's bid as the favored one, advising the Court, however, that a second bid had been signed on August 7, 1990, with Robinson. Broadmoor regarded the Robinson agreement as a back-up.

On September 10, 1990, the Bankruptcy Court approved the sale to Robinson, finding that it provided fewer contingencies and facilitated a more immediate closing. G–K appealed and sought a stay of the sale to Robinson. The Bankruptcy Court denied the stay on November 19, 1990. G–K then sought a stay in the District Court, which never ruled on the stay application. On December 7, 1990, the building was transferred to Robinson pursuant to the approval agreement.

On August 14, 1991, the District Court ruled on the merits of G–K's appeal and remanded to the Bankruptcy Court to determine Robinson's good faith purchaser status under § 363(m) of the Bankruptcy Code. The Bankruptcy Court declined to hold a hearing, but ruled that Robinson was a good faith purchaser. G–K's appeal from this ruling was dismissed by the District Court on the ground that the issues were moot within the meaning of Bankruptcy Code § 363(m) because the September 13, 1990 order and the sale of the Broadmoor asset had not been stayed pending G–K's appeal, the sale had closed on December 7, 1990, and Robinson was a good faith purchaser.

On this appeal, pursuant to 28 U.S.C. § 158(d), G–K's main contentions are that the Bankruptcy Court was in error in three respects. First, it should not have had both the G–K and Robinson contracts before it at the same time for consideration, and by mak-

---

* The Honorable Richard Owen, Senior United States District Court Judge for the Southern District of New York, sitting by designation.

1. While G–K calls its collective signed instruments here a "contract", this is a misnomer since there can be no contract in this situation without Bankruptcy Court approval, *In re Landscape Properties, Inc.*, 100 B.R. 445, 447 (Bankr. E.D.Ark.1988). Accordingly, these instruments are but binding bids, and we so refer to them hereafter.

ing a selection, it was improperly participating in the administration of the bankrupt's estate, performing administrative duties which, since the Bankruptcy Code of 1978, have been the sole responsibility of the trustee or debtor in possession, not the Court. Accordingly, G–K contends, the Bankruptcy Court was without jurisdiction to make any selection, and consequently, its selection of the Robinson bid was a nullity. Second, G–K contends that the Robinson "contract" was not entered into in good faith, since Robinson had actual knowledge of the prior G–K "contract" and third, that being so, i.e. Robinson not being in good faith, the doctrine of mootness does not apply. On the basis of the foregoing, G–K seeks a remand of the proceeding to the Bankruptcy Court where, G–K submits, that Court, considering the G–K contract by itself, would find that G–K was a good faith purchaser, that its contract was acceptable, and upon acceptance would award G–K the Broadmoor office building pursuant to its terms.

■ Turning to G–K's first assertion of error, while there is support for its position that a Bankruptcy Court cannot be presented with competing bids from which *it* is to choose, since that would involve it in an impermissible participation in the administration of a bankrupt's estate, we hold that a Bankruptcy Court in a case such as this does have the power to disapprove a proposed sale recommended by a trustee or debtor-in-possession if it has an awareness there is another proposal in hand which, from the estate's point of view, is better or more acceptable, *Landscape Properties, supra; See also* 2 Lawrence P. King, *Collier on Bankruptcy,* ¶ 363.03[1] (15th ed. 1991) (normally, terms of sale "will ultimately rest in the judgment and discretion of the trustee, with the court becoming involved only when an issue is raised and a hearing is requested"); *In re Summit Corp.,* 891 F.2d 1, 5 (1st Cir.1989)

("In order to achieve the goals of maximizing the value of the estate and protecting the interests of creditors, the court has plenary power to provide for competitive bidding.").

■ Next, since the G–K proposal was a bid and not a contract (see note 1, *supra* ), there was no bad faith on Robinson's part in signing and submitting its proposal knowing of G–K's.[2]

■ Two further grounds asserted by G–K to vacate the sale to Robinson have but scant support in the record. These are 1) inadequate notice of the sale; and 2) collusion between Broadmoor and Robinson evidenced by an allegedly concealed management contract between them. As to these claims, the notice of the hearing for the sale contained or referenced sufficient necessary information as to both bids and the time and place of their consideration. Next, as to the said management contract, while its details were not specified, the fact of its existence between Robinson and Broadmoor was specifically set forth in the Robinson bid on which the Bankruptcy Court acted, thus negating any claim of concealment and collusion. G–K's claim of collusion is further negated by the fact that Broadmoor proffered the *G–K* bid as its first choice. There is accordingly no basis to disturb the Bankruptcy Court's finding of November 25, 1991 that the Robinson transaction was in good faith and involved no fraud. Given this, we do not reach G–K's contentions as to the District Court's finding of mootness here, which finding, being undisturbed, is itself dispositive of this appeal.[3] *Matter of Andy Frain Services, Inc.,* 798 F.2d 1113, 1125 (7th Cir.1986).

The order of the District Court is affirmed.

---

**2.** We note that given the Bankruptcy Court's acceptance of the Robinson bid, G–K, absent some other meritorious ground for appeal, lacks standing to appeal, being merely an unsuccessful bidder and not an "aggrieved person" as is required. *Holmes v. Silver Wings Aviation, Inc.,* 881 F.2d 939, 940 (10th Cir.1989); *In re HST Gathering Company,* 125 B.R. 466, 468 (Bankr. W.D.Tex.1991).

**3.** 11 U.S.C. § 363(m) provides: "The reversal or modification on appeal of an authorization ... of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, *unless such authorization and such sale or lease were stayed pending appeal."* (emphasis added).